388 So.2d 731 (1980)
STATE of Louisiana
v.
Bruce SHANNON.
STATE of Louisiana
v.
Bruce SHANNON.
Nos. 66267, 61516.
Supreme Court of Louisiana.
September 3, 1980.
Rehearing Denied October 6, 1980.
*732 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Joseph Meyer, Louise Korns, Asst. Dist. Attys., for the State.
Grisbaum & Kleppner, Ferdinand Kleppner, Metairie, for Bruce Shannon.
CALOGERO, Justice.
Bruce Shannon was convicted of attempted second degree murder and sentenced to serve forty years at hard labor. He appealed from both his conviction and sentence, relying on twenty-one assignments of error. While the appeal was pending before this Court, defendant filed a motion for a new trial based upon newly discovered evidence. This Court, without reaching the merits of defendant's appeal, remanded the case to the district court for a hearing on the motion for a new trial. State v. Bruce Shannon, 360 So.2d 193 (La.1978). After the hearing,[1] the trial court denied the motion. We granted writs in this case to review the trial court's denial of defendant's motion, and consolidated this review with defendant's appeal.
The facts involved are essentially as follows: During the early morning hours of May 6, 1976, Ronald Receli and at least three other persons[2] were driving in the French Quarter in New Orleans in route from one bar to another. Receli had just turned onto Bourbon Street from Conti when he observed defendant and a woman, *733 one Kathy Mantegna, attempting to cross the street on foot in front of him. Receli shouted to the couple to get out of his way and made a racial slur.[3] Defendant and Ms. Mantegna stepped back at that point. As Receli passed the couple, a drink was thrown. Defendant and Ms. Mantegna contend that Receli threw the drink on them. State's witnesses contend that defendant threw the drink on Receli. In any event, Receli stopped his car. Defendant walked over to the car, placed his hands on the ledge by the driver's window and began talking to Receli. According to defendant's account, Receli reached under his seat and grabbed a pistol which he began to raise towards defendant. At this time, defendant contends that he pulled out his own gun and shot Receli in self-defense. Ms. Mantegna could only partially corroborate defendant's version. While she did not say she saw Receli's gun, she did say she saw Receli lean down and over and start to come back up just before Shannon shot Receli. State's witnesses contend that Receli did not grab a gun but was wiping the drink from his face when defendant shot him. However, a gun was found in Receli's car right after the incident under the driver's seat.
During the state's presentation of its case, Castanedo, a passenger in the Receli car on the night of the incident, testified that there were four persons in the car. These included himself, Receli, Dilts and Lambert. Neither Dilts nor Receli testified at the trial.[4] On cross-examination, Lambert, another passenger in the Receli car, who testified after Castanedo, admitted that there may have been a fifth passenger in the car at the time of the shooting but testified that he did not know who that fifth person was.[5]
*734 Defendant now contends (and showed this with the evidence presented at the hearing on the motion for a new trial) that he has new evidence to the effect that there were definitely five passengers in the car on the night of the shooting and that the fifth passenger, Victor "Rocky" Soto, saw the whole incident and will testify that Receli did in fact grab the gun from under his seat and raise it towards the defendant and the defendant then shot Receli in self-defense. In view of this new evidence defendant contends that he should be given a new trial. As stated above, the district court has denied defendant's motion for a new trial and that ruling is now before us for review.
La.C.Cr.P. art. 851 regarding a motion for a new trial provides:
"The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case, the motion shall be denied, no matter upon what allegations it is grounded.
"The court, on motion of the defendant, shall grant a new trial whenever:
". . .
"(3) New and material evidence, that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
". . ."
After reviewing this new evidence in light of all the other evidence presented at the trial, we are convinced that had this evidence been introduced at trial a different verdict would probably have been reached. The test for whether a new trial should be granted is not simply whether another jury might bring a different verdict but whether the new evidence is so material that it ought to produce a different result than the verdict reached. State v. Williams, 362 So.2d 530 (La.1978); and State v. Lovett, 359 So.2d 163 (La.1978). The new evidence sought to be introduced in this case meets this test.
The new evidence consists of the testimony of an eye-witness to the shooting which contradicts the testimony of the state's other witnesses and corroborates the testimony of the defense witnesses. Moreover, this testimony comes from a friend of the victim, one who had known the victim for some ten or twelve years, and one who, at the time of the incident, was a stranger to the defendant. Mr. Soto testified that he had been with Receli since about 4:00 o'clock that afternoon and that the two men had been drinking all evening since that time. Mr. Soto also testified that Receli did reach under his front seat and grab his gun (which he always kept there) and raise it towards defendant right before defendant shot him. He stated that Receli had taken the gun out earlier in the evening, prior to the time Castanedo, Lambert and Dilts joined them, and was playing with it and that Receli told Soto at that time "I would like to shoot me somebody...." Because of this prior incident, Soto testified that he was watching for Receli to go for the gun which might be why he saw Receli grab the gun while the other passengers did not. Further, Soto testified that having been friends with Receli for several years he had been drinking with him several times and that Receli often became aggressive when he drank. In view of defendant's plea of self-defense, and the nature of this testimony in relation to the other testimony, it is clear that this evidence bears directly on a disputed issue, meets the test outlined above and is sufficiently material to justify the granting of a new trial. State v. Glover, 73 So. 843 (1917).
*735 Now we face a second question concerning the new evidence; whether the new evidence was not discovered before or during trial, notwithstanding the exercise of reasonable diligence by the defendant. The trial judge denied defendant's motion for a new trial believing that defendant's failure to discover this new evidence before or during the trial was due to a lack of reasonable diligence on his part. We conclude, to the contrary, that it was not.
At the hearing on the motion for the new trial, defendant testified that while in Parish Prison, in October of 1976, awaiting trial, he met Henry Soto, another prisoner on defendant's same tier.[6] Defendant testified that Henry Soto told him, as he departed for court on the morning of his trial, that Henry's nephew, one "Rocky" Soto, "might have been in the car." Mr. Lindsey Larson, one of defendant's attorneys, testified that defendant first told him what Henry Soto had said that morning, during the trial of defendant's case just before Lambert took the stand. Thus, during the defense cross-examination of Lambert, after Lambert testified that there were only four passengers in the car, counsel asked him if "Rocky" Soto was a fifth passenger in the car on the night of the incident. Lambert stated that he did not recall, but did admit that there may have been a fifth passenger (see Footnote 5). At this point, counsel requested that he be allowed to recall Castanedo, another passenger in the Receli car, who had testified earlier (before counsel was aware of the possible fifth passenger) that there were only four passengers in the car. The court denied the defense request and defense counsel objected to this ruling assigning it as error.[7] After being denied two requests to recall Castanedo under cross-examination, counsel dropped the matter.
It was not until after defendant was convicted and sentenced that he happened to meet one Victor "Rocky" Soto in Parish Prison.[8] At that time Victor Soto told defendant that he was in Receli's car at the time of the shooting. He said that he left the scene of the incident because he was on federal parole at the time, had just been released from prison six months earlier and did not want to be involved in an incident involving a gun. It was only at this time that defendant actually found out that "Rocky" Soto's name was Victor Soto and that he would admit that he was in the car on the night in question, that he would testify if called upon to do so, and would corroborate defendant's account of the *736 facts, i. e. that Receli pulled out a gun and was raising it towards defendant before defendant shot Receli.
The trial judge indicated that the exercise of reasonable diligence by defense counsel would have uncovered the witness before or during trial. We disagree. Both defense attorneys testified that they interviewed both Castanedo and Lambert, and possibly Dilts (the fourth passenger who was not called as a witness) well in advance of trial. All witnesses interviewed stated that there were only four passengers in Receli's car at the time of the incident. These three men, plus Receli, were the only persons listed as passengers in the car on the police report of the shooting. There was simply no reason, prior to trial, that the defense should have suspected that there were in fact five passengers in the car.[9] Prior to defendant's conversation with Henry Soto, on the morning of the trial, no one ever even alluded to the fact that there may have been more than four passengers in the Receli car. Therefore, there is no way the defense, with the exercise of reasonable diligence, could have found out about this witness prior to trial.
The only question that remains is whether the exercise of reasonable diligence would have uncovered this witness during the trial.
After defendant spoke to Henry Soto on his way to his trial, all defendant knew, at that time, was that a "Rocky" Soto (defendant did not even know this person's real name but only a nickname) "might" have been in Receli's car at the time of the shooting. When defendant tried to confirm this information through cross-examination of Lambert (the passenger sitting right next to Soto), Lambert stated that he did not know if there was someone sitting next to him or not and if there was he did not know whether it was Rocky Soto or not, although he believed there may have been a fifth passenger. In a further attempt by defendant to conform this information, defendant requested that Castanedo be recalled to the stand, but this request was erroneously refused by the trial judge on two separate occasions. The trial only lasted about seven hours,[10] from jury selection to verdict, and defendant simply did not have any time during this trial independently to verify his information after being denied his request to recall Castanedo, a witness who could have verified it. Therefore, in view of the trial court's erroneous denial of defendant's request to recall Castanedo, and the facts unique to this case as stated above, we conclude that defendant's failure to discover Soto's testimony prior to or during his trial was not due to a lack of reasonable diligence on his part.[11]
It should be noted that the court's failure to allow the defense to recall Castanedo to the stand is very important to our holding here. Had the defense been allowed to re-examine Castanedo and to confirm the presence of Soto in Receli's car on the night in question and then had he neglected to request a recess to try and find this witness, the result here might be different. It is this trial error, in conjunction with the fact that in advance of trial all passengers in the car had denied the presence of a fifth passenger, which brings us to the conclusion that the failure to obtain this testimony prior to or during the trial was not because of a lack of reasonable diligence on the part of the defense.
It has been argued that because the defendant had been informed that one *737 "Rocky" Soto may have been in Receli's car on the night of the shooting, that the defendant did in fact know of the evidence "before or during the trial" and that his motion for a new trial based on newly discovered evidence should be denied. This same argument was presented in State v. Brooks, 386 So.2d 1348 (La.1980).
In Brooks, the defendant had been charged with distribution of a controlled dangerous substance. The state attempted to prove the commission of the crime by a police officer's testimony that the officer was brought to defendant's house by one Allen Russell to purchase marijuana and did in fact purchase marijuana at that time from the defendant. The officer's testimony at trial was the first intimation the defense had that there was anyone else present at the time of the alleged drug sale. The state did not call Russell to the stand and the defense did not ask for a recess or a subpoena to have Russell brought to court. It was not until after the trial and conviction that the defense had a chance to interview Russell, who then told them that he had never seen the officer and never witnessed a drug sale by the defendant. The trial court denied defendant's motion for a new trial based upon newly discovered evidence, being of the opinion that the defendant knew of the evidence at the time of the trial. Justice Blanche, speaking for the Court, reversed the trial court, holding that "[t]he existence and identity of a witness, without any knowledge of what that witness' testimony may be, does not in these circumstances constitute evidence discovered at the time of trial."
In the present case, defendant had even less certainty about the possible witness than did the defendant in Brooks. Here, defendant had only been told, on his way to court, by a fellow inmate, not by a state's witness at trial, that a "Rocky" Soto may have been in the victim's car on the night in question. Defendant here, unlike Brooks, was not even certain that "Rocky" Soto was definitely at the scene. Therefore, we find Brooks persuasive, if not controlling, under the facts presented here and find the state's argument that defendant knew of the evidence at the time of the trial unconvincing.
Because the defendant's failure to discover Victor "Rocky" Soto's testimony before or during the trial was not due to a lack of reasonable diligence on his part, and because the introduction of this new evidence would have probably changed the verdict of guilty, we conclude that the motion for a new trial should have been granted. Denial thereof constitutes reversible error.
In view of our holding we do not reach the other assignments of error presented in defendant's appeal.

Decree
For the foregoing reasons the trial court's ruling denying defendant's motion for a new trial is reversed, defendant's conviction and sentence are set aside and the case is remanded to the district court for a new trial.
REVERSED.
NOTES
[1] On remand, the trial court began a hearing on defendant's motion for the new trial, but denied the motion without permitting the defendant to call to the stand an eyewitness whose testimony constituted the alleged newly discovered evidence. Upon application by defendant for writs at that time, this Court unanimously granted writs and rendered an order requiring the trial judge to permit the defendant to call all his witnesses in support of his motion prior to ruling on the motion. State v. Shannon, 367 So.2d 864 (La.1979). Subsequently, defendant was required to file two additional writ applications with this Court before his eyewitness was brought before the trial court to testify. State v. Shannon, 369 So.2d 710 (La.1979) and State v. Shannon, 371 So.2d 267 (La.1979). Finally, defendant filed a fourth writ application with this Court asking that we order the trial judge to rule on his motion. When this Court did order the trial court to rule on the motion [State v. Shannon, 375 So.2d 392 (La.1979)], the motion was denied.
[2] The newly discovered evidence upon which defendant's motion for a new trial is based indicates that there was a fifth person in the Receli car on the night of the shooting. Defendant asserts that the fifth passenger was Victor "Rocky" Soto.
[3] Defendant was a white man employed at the time as a body guard for Chris Owens. Defendant carried a gun with him as Ms. Owens' body guard because he took her home every night and she sometimes carried large amounts of cash with her. The woman, Ms. Mantegna, a black woman, was also employed at Chris Owens' club at the time as a barmaid.
[4] Dilts was not called as a witness by either the state or the defense. Receli was physically unable to testify.
[5] Lambert's testimony on cross-examination regarding how many persons were in the Receli car at the time of the shooting was as follows:

". . .
Q. Did you go right to Mr. Receli's car?
A. Yes. His car was parked right out front.
Q. And you were riding on the back seat, right behind the driver, is that right?
A. Right.
Q. And was Mr. Rocky Soto there with you that evening?
A. Not that I recall.
Q. Do you know Rocky Soto?
A. No. Not that I can recall.
Q. Pardon me?
A. I don't recall the name.
Q. You don't recall the name?
A. No.
Q. He wasn't in the car with you at anytime?
A. Not that I recall.
Q. Was there anyone else in the car with you?
A. David Dilts was in the car.
Q. David Dilts, okay. David Dilts, Mr. Castanedo, and you, is that right?
A. Right.
Q. Mr. Soto was not with you?
A. I believe there was another person, maybe another person in the car.
Q. Okay, now, this other person that was in the car with you, apparently was in the car at the time the shooting occurred, is that right?
A. Right.
Q. And what did he do?
A. I don't know what he did.
Q. Where did he go?
A. I don't know.
Q. And he was apparently with Mr. Receli at the time of the shooting?
A. I really don't know.
Q. Isn't it a fact that his name is Mr. Soto?
A. I don't know.
Q. Where was he sitted (sic) in the car?
A. He was sitted, (sic) I believe, in the back seat, as I said, I really don't remember.
Q. Is it correct then that in the Receli vehicle Mr. Receli was in the front left seat?
A. Yeah, he was driving.
Q. And Mr. Castanedo was in the right front seat, is that correct?
A. Yes.
Q. Is that right?
A. Yes.
Q. And you were in the left rear seat, behind Mr. Receli, is that right?
A. Right.
Q. And right next to you was Mr. Soto?
A. I don't remember if it was him or David Dilts.
Q. So then there was a total of five people in the car, is that right?
A. I believe so.
Q. Did you tell the police about this other man that was with you all that night?
A. I just told them what happened to me.
Q. You didn't tell them?
A. They didn't ask me, I don't believe, I don't recall them asking me who was in the car.
Q. Are you absolutely sure you don't remember this other man's name?
A. I don't remember." (emphasis provided)
[6] The court ordered the Clerk to procure the Parish Prison records to determine whether Henry Soto was in Parish Prison at the alleged time. The prison records were read into the record. They showed that Henry Soto was in Parish Prison during October 1976 (in fact, from September 15, 1976 through November 24, 1976) and on the same tier as defendant.
[7] In defendant's brief on appeal, defendant argues in assignments of error numbers 8 and 18 that it was error on the part of the trial court to deny his motion to recall Castanedo. Counsel argues that he was denied an opportunity to reach the truth in the case and also he was denied an opportunity to impeach the witness (Castanedo) in a case in which the resolution of a factual conflict and witness credibility would be determinative. Because we reverse on defendant's motion for a new trial, we do not have to consider whether assignments of error 8 and 18, standing alone, are sufficiently meritorious to warrant a reversal of the conviction. Nonetheless, the ruling barring recall of Castanedo under cross-examination was erroneous. The defendant's constitutional right to produce evidence in defense and to confront (cross-examine) the witnesses against him far outweighs the trial judge's discretion in maintaining an orderly presentation of the evidence. While we are mindful that the decision of whether a witness may be recalled for further cross-examination is left to the discretion of the trial judge, his ruling may be reversed where an abuse of discretion is shown. State v. Banks, 362 So.2d 540 (La.1978). Here, the defense did not have an opportunity to cross-examine Castanedo concerning the number of passengers in the car because they only came upon the information after he was excused. Thus, the only way the defense could have examined Castanedo about this information and have impeached him by showing that there were five passengers rather than four, as he had earlier testified, was to recall him under cross.
[8] The trial judge also requested the Parish Prison records concerning Victor Soto and found that they also corroborated defendant's story, that Victor Soto was in Parish Prison from January 11, 1977 until January 17, 1977, and both men were on tier A2.
[9] The defendant did not know how many passengers were in the car. He stated that he did not get a good look because everything happened so fast and his focus was mainly on Receli. Ms. Mantegna did not know how many passengers were in the Receli car either.
[10] The court minutes show that on Wednesday, November 17, 1976, court met at 9:00 a. m. and jury selection commenced. The jury returned its verdict at 4:25 p. m.
[11] The only thing the defense could have done was to ask for a recess so that they could try and locate one "Rocky" Soto. His neglect to do so is excused, in our view, by the fact that defendant's information was so tenuous. Not only was defendant uncertain as to whether Soto was actually in the car but defendant had absolutely no hint as to what Soto's testimony would be if he was in the car and could be found during the course of a brief one day trial.