408 So.2d 1269 (1982)
STATE of Louisiana
v.
Ruffes J. TUESNO.
No. 81-KA-1455.
Supreme Court of Louisiana.
January 25, 1982.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Hortence M. Patterson, Jim Williams, John Craft, J. Kevin McNary, Asst. Dist. Attys., for plaintiff-appellee.
Chris Christofferson, of Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
*1270 CHARLES A. MARVIN, Justice Ad Hoc[*].
In this appeal of his conviction for armed robbery, defendant argues two assignments of error which relate to the trial court's refusal of detailed testimony by defendant and an assistant district attorney that defendant's brother, with similar facial characteristics, was being prosecuted for other armed robberies. We affirm.

THE FACTS
While the victim, Arthur Phillips, Jr., was walking on Washington Avenue in New Orleans before daylight about 2:00 a. m. on Saturday, January 3, 1981, he became apprehensive when he noticed that defendant was following him. The defendant followed Phillips for about two blocks and then walked past Phillips and into an alley near Freret Street. When Phillips reached the alley, the defendant put a "long-barreled" gun in Phillips' face and ordered him into the alley where defendant said, "Give me all the money you got."
Phillips surrendered his wallet and was ordered to undress and get on his knees. The robber asked if Phillips had more money than was in the wallet and then ordered Phillips to move from the alley and into an adjoining vacant building. The robber again ordered Phillips to kneel and struck Phillips with the pistol. The robber twice threatened that he "ought to kill" Phillips and inquired whether Phillips knew him. When Phillips answered negatively, the robber told him that his name was "Zorro". After leaving the building, the robber returned to order Phillips not to come outside until Phillips counted to 100, and stated, "By the time you count to a hundred, I'm going to be gone."
Phillips testified that he was in the alley and the building for about 30 minutes, that he was naked and cold and was bleeding from the head wound where the pistol struck him. Phillips was robbed of $120, his shoes and a brown leather jacket. Phillips retrieved his trousers and shirt from the alley and telephoned a nearby police precinct station to report the robbery. Phillips said the area along Washington Street where he and the defendant walked, sometimes within a foot or two of each other, was well lighted and that he was 100 percent sure of his identification of the defendant as the person who robbed him. He described the robber as being a light-skinned or brown-skinned Negro male, over six feet tall, big and heavy set, although at one time he estimated the robber's weight at "about 150 lbs.".
After discussing the robbery with the police, Phillips made inquiries in the neighborhood of the robbery about the identification of persons fitting the description of the robber and wearing similar clothing. The robber was dressed in what Phillips described as a "blue jean outfit" and had a red bandana-type kerchief (apparently rolled or folded and tied) around his forehead.
On January 9, 1981, Phillips recognized defendant who was wearing a similar outfit and was walking in the vicinity of Washington Avenue and Danielle. Phillips alerted the police but defendant could not then be found. About 2:30 a. m. on January 10, 1981, Phillips saw the defendant then sitting in front of a liquor store near the intersection of Felicity and Clara streets, the area where Phillips had been told that defendant "hung out" and lived. Phillips testified that he thought defendant did not have on the same clothes as when he was earlier seen. The defendant had a brown paper sack near his feet at the liquor store. Phillips walked by, saw a pistol and either a beer or a whiskey bottle in the sack, and said "Good evening" to the defendant, who *1271 was drinking out of a cup. Phillips walked to the precinct station and again reported defendant's whereabouts to the police.
The police went to the liquor store in a marked patrol car, arriving before Phillips, who walked the short distance at police instruction. One of the policemen testified that he saw the defendant place the brown paper bag on the ground near defendant's feet when the police car drove up. Phillips identified defendant to the policemen at the liquor store. The brown paper bag was seized by the police. This bag contained a long barrelled pistol, later identified by Phillips in the police station as being similar to the pistol that was used to rob him and to the pistol that he had earlier seen in the paper bag. The pistol and a red bandana-type kerchief that was taken from the pocket of defendant when he was arrested were introduced into evidence.
Defendant subpoenaed assistant DA Green as a witness. On the day of the trial, the State filed a motion "In Limine and ... To Quash" this subpoena, contending that the trial court should determine whether Green's alleged information about the brother of defendant and his involvement in other armed robberies was hearsay, irrelevant, or a part of the District Attorney's work product.
The trial court held a hearing on the State's motion and said that the subpoenaed assistant DA would be made the court's witness to determine whether his testimony was relevant. This assistant testified that he was prosecuting one Jack Tuesno for two or more armed robberies but that he could not testify of his own knowledge what Jack Tuesno looked like. This assistant assumed that a photograph of a person in the prosecution file on Jack Tuesno was a picture of Jack Tuesno because it was allegedly signed by one or more of the victims that Jack Tuesno was charged with robbing. The court ruled this testimony irrelevant and excused the assistant prosecutor from testifying. In the course of this ruling, the court ordered the clerk of court to hold the photograph of Jack Tuesno in case it was needed at the trial of defendant, Ruffes J. Tuesno. The court additionally withheld ruling on the admissibility of the Jack Tuesno photograph "to see what develops" with respect to the possible subpoena of the prosecution records pertaining to Jack Tuesno. The court commented: "... I'm going to withhold a ruling ... to see what the defense uses as a vehicle to prove the identity of the brother [Jack Tuesno]. It might be that [defense counsel] will bring in Jack Tuesno and have him stand before the jury for whatever purpose. For identity. I don't know."
At the trial, the defendant testified that his brother, Jack Tuesno, lived in the vicinity of Clara and Felicity streets in New Orleans and that Jack Tuesno was then in the Orleans Parish Prison for armed robbery. When the defendant was asked where the armed robberies by Jack Tuesno occurred, the court sustained the State's objection on the grounds of irrelevancy. Defense counsel objected to the ruling, arguing that this question should be answered because it "... goes to the identification of [Jack Tuesno]." At defendant's request, Jack Tuesno was brought before the jury shortly thereafter and was identified by defendant as his brother. Defendant also testified that he and Jack Tuesno had "longer hair" on the date Phillips was robbed.
On cross-examination, Ruffes J. Tuesno identified older pictures of himself taken in 1978 and in 1980 and a photostat of an older picture of Jack Tuesno. At the close of the case, and at the State's request, Jack Tuesno was returned to stand side by side with the defendant before the jury, where the victim identified defendant as "the one" that committed the robbery. The photostat of the photograph of Jack Tuesno and the 1980 photograph of defendant were introduced into evidence over defendant's objection of irrelevancy.
Defendant also introduced alibi testimony from himself, his live-in girlfriend and her *1272 14-year-old nephew to the effect that he was at home from about 12:30 a. m. until after daylight on January 3, 1981. Under cross-examination defendant stated that he was not accusing his brother Jack Tuesno of committing the armed robbery with which defendant was charged and for which defendant was being tried.

ASSIGNMENTS OF ERROR 1 AND 2
In these assignments, defendant first asserts that it was error for the trial court to hold the pre-trial hearing and to "arbitrarily" determine that the testimony of an assistant district attorney who was prosecuting defendant's brother for other armed robberies was irrelevant. The trial court's action, defendant argues, denied him his right to call witnesses in defense of the charge. U.S.Const. amend. VI.[1] Defendant secondly asserts that it was error for the court "not to permit [defendant to testify] as to his knowledge of the armed robberies perpetrated by ... the ... brother... [and] a denial of due process." Under the circumstances of this case, we cannot agree.
A trial judge's discretion in determining issues of relevancy and competency and in maintaining an orderly presentation of evidence certainly must yield to the constitutional right of the defendant to call witnesses and produce evidence in defense to a criminal charge. See State v. Shannon, 388 So.2d 731, 735, fn. 7 (La.1980). See also State v. Stiltner, 61 Wash.2d 102, 377 P.2d 252 (1962), cert. denied, 380 U.S. 924, 85 S.Ct. 928, 13 L.Ed.2d 810, and Gajewski v. United States, 321 F.2d 261 (CA 8, 1963), cert. denied. In our adversary system, however, the legal counsel for either party is not generally considered as an ordinary witness because of the very special professional position of counsel in the system. See generally, Code of Professional Responsibility, LSBA Lawyer's Deskbook.[2] See authorities cited and discussed in Pirsig & Kirwin, Professional Responsibility, 3d Ed., pp. 378-379, West Publishing Company, St. Paul, Minnesota, 1976, and in annotation, "Prosecuting Attorney as Witness", 54 A.L.R.3d 100, § 14, (1974), superseding 149 A.L.R. 1300 (1943).
Pirsig and Kirwin summarizes the conflicting principles in this language:
"Trial courts are generally held to have discretion on whether to allow a party to call opposing counsel as a witness, on the view that `attempting to call opposing counsel * * * to establish some fact that can be readily proved in a different manner should be discouraged.'
* * * * * *
"It has been held that the defendant's constitutional right to be fully heard requires allowing the defense to call the prosecutor as a witness, on the view that `litigants, and especially defendants in criminal cases, should not be hampered in their choice of those by whom they choose to prove their cases.' But refusal to allow the prosecutor to be called has been upheld where it appeared other witnesses were available to establish the point sought to be made, and where the defense failed to show the relevance and materiality of the desired testimony." Supra, at pp. 378-379. Citations omitted.
In Gajewski, supra, the court stated:
"To be sure, an accused's right to call relevant witnesses and to present a complete defense may not be abrogated for the sake of trial convenience or for the purpose of protecting a United States Attorney from possible embarrassment while testifying, if he possessed information *1273 vital to the defense." 321 F.2d at 268, 269. Emphasis supplied.
Stiltner, supra, observed:
"The defendant in a criminal trial has the right to prove his defense in the best manner available to him; the trial prosecutor is a competent witness; his testimony must be relevant and material to the theory of the defense; it must not be privileged, repetitious, or cumulative ... All this lies in the broad discretionary right of the trial judge to control the trial of the case.
"We do not deem it an abuse of discretion for the trial court (in the absence of the jury) to require an explanation and an offer of proof from defense counsel. Both must be considered, however, in the light of the issues raised and the theory of the defense." 377 P.2d at p. 254. Citations omitted. Emphasis supplied.
Accordingly, we hold that it was not error for the trial court to hold the pre-trial hearing to determine what, if any, testimony the defendant would be allowed to elicit from the assistant district attorney.
Defendant argues that his "purpose" in calling the assistant prosecutor was to verify that defendant does have a look-alike brother who was being prosecuted for three counts of armed robbery in another section of the court and that the location of these robberies occurred in the same area and on the same weekend. While the defendant did not state this exact purpose to the trial court, the trial court correctly noted that defendant had other means to prove the occurrence of the robberies by the brother and to prove the identity of the brother. The ruling proved eminently correct, when at the trial, the defendant stated that he was not accusing his brother of committing the armed robbery for which defendant was being tried.
In essence, the defendant is contending, not that the robbery of Phillips was committed by his brother, but that Phillips' identification of defendant is patently fabricated and mistaken because the statements by Phillips to the police about the robber and about what Phillips "learned" from persons in the neighborhood more closely fitted defendant's brother than the defendant himself. This overlooks the important in-court identification of defendant when he was side by side with his brother and the street identification before and when defendant was arrested. This identification was not made by the police from Phillips' first description, but from Phillips' identifying defendant at the liquor store location where he was when the police arrested him. Phillips was extensively cross-examined as to his identification of defendant and it was within the jury's province to believe Phillips' identification.
Under the circumstances of this case, we find no error in the trial court's determination that the testimony defendant sought to elicit from the assistant prosecutor was irrelevant. It was also hearsay. The fact that defendant had a look-alike brother who was being prosecuted for other armed robberies in another section of the same court, could have been, and was, established by witnesses other than the assistant prosecutor.
In the related assignment of error, defendant asserts that the court erred in not permitting him to testify "as to his knowledge of the armed robberies perpetrated by ... the ... brother." Again we observe that this testimony was not offered for the purpose of showing that the brother committed the crime with which defendant was charged. Compare State v. Dyer, 154 La. 379, 97 So. 563 (1923). See Wigmore on Evidence, 3d Ed., §§ 139-142.
We deduce that defendant, who testified about his look-alike brother who was charged with other robberies, is complaining that he should have been allowed to testify about the details of these robberies. It is difficult for us to conceive, and defendant has not shown us, how these details "go to the identification" of the defendant by the victim, as defendant argued below.
*1274 Even if the details of the brother's robberies could conceivably be admissible for the purpose of impeaching the victim's identification testimony, the defendant made no attempt to show, as a predicate or foundation, that he had independent or direct knowledge of the details of the brother's robberies. Compare circumstances where a defendant, charged with four counts attempted rape, may use similar crimes evidence to rebut or weigh against the State's use of similar crimes evidence against that defendant. State v. Washington, 386 So.2d 1368 (La.1980). The relevancy of evidence must be determined by the purpose for which it is offered. LRS 15:442. Under the circumstances, and when this defendant does not suggest that his look-alike brother committed the robbery with which defendant is charged, the details of the robberies allegedly committed by the brother were correctly held irrelevant and inadmissible. LRS 15:441, 275.

ASSIGNMENT OF ERROR NO. 3
Appellant does not brief this assignment which asserted that the trial court erred in admitting a photograph or photostatic copy of a photograph of the defendant which was made over a year before the offense. Appellant's objection at the trial as to relevancy of this item, goes to the weight of the victim's identification of defendant. In any event, defendant merely states that this is an assignment of error but does not otherwise brief or argue this assignment on appeal. Even should we deem this assignment not abandoned, we find no error. See State v. Sanchez, 400 So.2d 632 (La.1981).
Defendant's conviction is AFFIRMED.
DIXON, C. J., concurs.
NOTES
[*] Judges Pike Hall, Jr., Charles A. Marvin, and Jasper E. Jones, of the Court of Appeal, Second Circuit, participated in this decision as associate justices ad hoc, joined by Chief Justice John A. Dixon, Jr., and Associate Justices Walter F. Marcus, Jr., Fred A. Blanche, Jr., and Harry T. Lemmon.
[1] LSA-Const. Art. 1, § 16, is not cited by defendant, but provides the right of a defendant charged with a crime to compel the attendance of witnesses and to present a defense.
[2] Counsel for a plaintiff in a civil action or for a party in a criminal proceeding is cautioned not to become a witness for his client. See Gutierrez v. Travelers Ins. Co., 358 So.2d 349 (La. App. 4th Cir. 1978); State v. Miller, 391 So.2d 1159 (La.1980).