**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 11, 2013**

# In the Court of Appeals of Georgia

A12A1762. GOODWIN v. THE STATE.

BARNES, Presiding Judge.

A jury convicted Larry Gerald Goodwin of two counts of child molestation and one count of misdemeanor marijuana possession, and sentenced him to serve 20 years in confinement followed by 20 years on probation. The trial court denied Goodwin's motion for new trial, finding that his trial counsel had not been ineffective. On appeal, Goodwin contends that the trial court erred in not allowing him to present hearsay evidence about the victim's first interview with authorities, and that his trial counsel was ineffective in several respects relating to that interview. He also contends that his trial counsel was ineffective for failing to put him on the stand to testify, and that the trial court erred in limiting his ability to question the State's trial counsel under oath

during the hearing on his motion for new trial. For the reasons that follow, we find no error and affirm.

Goodwin was indicted for two counts of child molestation.[1] The indictment charged him with committing the offenses between January 1, 2009 and April 27, 2010 against the same victim who was younger than 16. In Count 1 he was accused of having the victim place her hands on his penis and rub, with the intent to arouse and satisfy his sexual desires, and in Count 2 he was accused of placing his hands on the child's vagina, with the same intent. The State called three witnesses to prosecute the molestation charges: an investigator with the Spalding County Sheriff's Department, the victim, who was eight years old at the time of trial, and the victim's mother as a rebuttal witness.[2]

Viewing the evidence presented at trial in the light most favorable to the prosecution, the Spalding County investigator testified that after she received a referral about the case from a Cobb County detective, she set up a forensic interview with the seven-year-old victim and her mother. During the interview, the child said

---

[1]Goodwin was also indicted for and convicted of misdemeanor marijuana possession, but raises no arguments on appeal related to that conviction.

[2]Three witnesses also testified about finding, storing, and testing marijuana found in Goodwin's residence upon execution of a search warrant.

that Goodwin, who was married to the victim's grandmother, "had done some things to her that . . . she described as being nasty." The child said Goodwin "would make her rub his wee-wee, referring to his penis, with lotion and . . . she would have to hold on to it. And at the time she said she got tired, and she couldn't let go until he tells her to let go." The child also said he had "touched her private. He also had her to suck it. And there was an occasion where he placed his penis on her backside." The child was "very descriptive" in her statement and in drawings she made.

A week later, the investigator conducted a follow-up interview, during which the child said the last time she had been to the defendant's house she stayed for a week during spring break, which was a month before the interview. When asked if anything happened while she was there with her grandparents, she said it did, that Goodwin "made her rub his wee-wee with lotion." The victim specified that Goodwin "would put the lotion in her hands and would tell her to rub it," and that when she rubbed it, "it would spit... a white substance with bad germs." She said these events took place in Goodwin's bedroom and near a large tool box in the barn, and that the lotion had no smell, was white, and was in a brown bottle he kept in drawers in the barn and bedroom.

The investigator obtained and helped execute a search warrant for Goodwin's house, where searchers found a brown bottle on the bedroom floor, a container of lotion on the floor beside the night stand in Goodwin's bedroom, and another container of lotion in a desk drawer inside the barn, which also contained a large tool box. Multiple bottles of lotion were found inside the closet in another bedroom.

Throughout the trial, Goodwin attempted to introduce evidence about interviews with the victim and her mother by a Cobb County detective a few weeks before the case was transferred to Spalding County, but the trial court sustained the State's hearsay objections because the detective was not present at trial.

The excluded evidence included recorded interviews with the victim and her mother after the victim told a counselor at school that her legs were bruised because her brother left them when he "kissed her private." In the interview, the victim said most of her bruises were caused by her older brother punching and kicking her. The victim's body had no suspicious marks, and the only reference to sexual abuse during this interview was her disclosure that several years before her brother's friend asked her to "suck his wee wee." In an interview without the child present, her mother said the victim had previously said her brother punches her, but the brother denied it, and the mother was not sure if the victim was telling the truth or not as she "has been

4

known to lie." The detective concluded that there was no evidence of child molestation and turned the matter over to DFCS.

Eleven days later, the mother called the detective to report that during a discussion about making good choices, the victim began crying and revealed that Goodwin "makes her rub lotion on his 'wee wee' and told her to keep it a secret." The detective then referred the case to Spalding County for further action because that is where the victim said the incidents with Goodwin had taken place.

Trial counsel testified at the motion for new trial hearing that he wanted the jury to hear evidence that the victim initially alleged that her brother had been punching her in her private area, but the "key part" he wanted from the recorded interviews was that the mother said the victim lied all the time and did not know whether to believe her or not. Counsel described his unsuccessful efforts to serve the Cobb County detective with a subpoena to appear at trial, but he ultimately announced ready for trial because he thought the State had subpoenaed the detective as they had when the case was previously called for trial.

1. Goodwin contends first that the trial court erred in not allowing into evidence hearsay testimony related to the interviews, arguing that the evidence was admissible as an exception to hearsay because the Cobb County detective was

"unavailable." In Goodwin's statement of facts in his brief, he discusses some of his unsuccessful attempts throughout trial to introduce evidence regarding the Cobb County detective's interviews and report. In his argument on this first enumeration, however, he does not describe the specific rulings he contends are error. Instead, he argues that, despite Goodwin's proffers to support his claim that the detective was unavailable and therefore the evidence was admissible as an exception to hearsay, "the court sustained numerous objections to trial counsel's use of [the] Cobb County Detective['s] report and opinions." Then Goodwin avers that the trial court "finally recognized the strength of those arguments and then apparently relied upon the state's statement that [the detective] would be available."

Goodwin's general summary of the "numerous" rulings related to this issue establishes no error. Goodwin seems to be relying on the general necessity exception under former OCGA § 24-3-1,[3] which has an "unavailability component," rather than on former OCGA § 24-3-10, because under the latter statute, testimony given by an "inaccessible" witness must have been made under oath in a former proceeding on the

---

[3]Goodwin's trial commenced before January 1, 2013, so Georgia's new Evidence Code does not apply. See Ga. L. 2011, pp. 99, 214, § 101.

6

same issue between the same parties to be admissible, and the testimony Goodwin sought to admit was not given under oath in a former proceeding.

Under former OCGA § 24-3-1 (b), hearsay evidence was admissible in "specified cases from necessity" if the declarant was "inaccessible" and other requirements were met, but establishing that a witness was inaccessible required "proof of sustained efforts by parties to locate the witness in question before allowing the admission of such testimony ." *Hill v. State*, 291 Ga. 160, 163 (3) (728 SE2d 225) (2012). We review a trial court's decision about whether a witness was inaccessible or not for abuse of discretion, but in this case, Goodwin failed to obtain a ruling on the witness's inaccessibility. Accordingly, we find no error.

2. Goodwin argues his trial counsel was ineffective in several respects: in announcing ready for trial when he had not perfected service of his subpoena on the Cobb County detective; in failing to move for a mistrial when the State did not call the detective as a witness despite the State's assurance he would be available to testify; in failing to pursue and proffer taped evidence of the victim's prior inconsistent statements to the Cobb detective; in failing to move for a continuance or mistrial after the trial court's adverse rulings about the admissibility of the Cobb

7

detective's report; in failing to put Goodwin on the stand to testify, and in failing to call "each and every defense witness."

To prevail on a claim of ineffective assistance of counsel, Goodwin must show both that trial counsel's performance was deficient and that the deficient performance was prejudicial to his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LEd2d 674) (1984); *Aaron v. State*, 275 Ga. App. 269, 271 (4) (620 SE2d 499) (2005).

> The performance of counsel test requires counsel to perform reasonably under prevailing professional norms. We do not evaluate this prong of the test because the issue turns on the second prong. If there was no prejudice to the defense, it does not matter whether the performance of counsel was adequate. Therefore, we turn to the second prong of the test.

*Wadley v. State*, 258 Ga. 465, 466-467 (3) (369 SE2d 734) (1988). To establish prejudice, "the defendant must show that, but for inadequate performance of counsel, there is a reasonable probability the result would have been different." Id. at 467 (4).

a. As Goodwin himself notes, objections and discussions and rulings about the admissibility of the Cobb detective's report and interview permeated the trial, and his first four claims of ineffective assistance are related to counsel's failure to place that evidence before the jury. But trial counsel testified in the motion for new trial hearing

8

that the critical part of that evidence was that the victim initially blamed her brother for her bruises and that her mother said that the victim was a liar. Trial counsel successfully introduced evidence about those issues, and therefore Goodwin cannot show that he was prejudiced by his trial counsel's performance.

For example, during his cross-examination of the Spalding County detective, Goodwin attempted to ask about the Cobb detective's report, and the State objected to it as inadmissible hearsay. The trial court sustained the State's objection, but the detective subsequently testified that the victim had told the Cobb detective that "her brother had tried to touch her pee-pee," and that the Cobb detective terminated that investigation because he concluded that the evidence did not support the molestation allegation in that county. Further, the victim testified that she and her brother "play rough" and she "always [got] bruises on [her] legs," that some of her bruises came from her brother and some from herself, and that when she told her mother that some of the bruises came from her brother, her mother told him not to be so rough with her.

The victim's mother testified that the Cobb detective asked if she had questioned the brother about causing the bruises, and she told the detective that she had spoken to the brother about the matter. While the State objected when Goodwin asked the mother if she told the Cobb detective she was not sure whether the victim

9

was telling the truth or not, and that "half the time she's been known to lie," the trial court overruled the objection and mother responded, "Yes."

Assuming for the sake of argument that trial counsel's failure to serve the Cobb detective with a subpoena and subsequent inability to admit evidence of the detective's report and interviews fell below "prevailing professional norms," no reasonable probability exists that the jury would have returned a verdict of not guilty if that evidence had been admitted. Based on our review of the trial, and considering the admission of evidence that the victim had previously accused her brother of bruising her and touching her private area and that her mother had previously questioned the victim's truthfulness, the trial court did not err in finding that Goodwin's trial counsel was not ineffective based on this issue.

b. Goodwin claims his trial counsel was ineffective for failing to call him to the stand to testify on his own behalf, because presenting only two witnesses – Goodwin's wife and a paid expert – was "weak by definition." He continues, "Trial counsel should have urged the Defendant to testify even if he was a convicted felon, armed robbery being a crime entirely different in nature from child molestation," because the victim's testimony "was far too damning to have been permitted to stand unrefuted" by the Defendant.

"The decision whether or not to testify is a tactical one made by the defendant himself after consultation with counsel. The choice of whether to testify is ultimately a defendant's." (Footnotes omitted.) *Chambers v. State*, 266 Ga. 39, 42 (3) (463 SE2d 887) (1995). Here, the trial court specifically reminded Goodwin at trial of his absolute right to testify or not, and that the decision was his and not his lawyer's. Goodwin confirmed that the decision not to testify was his personal decision, and the trial court found that Goodwin made his decision not to testify with a complete understanding of his rights. Trial counsel testified at the motion for new trial hearing that, while Goodwin initially wanted to testify, as their trial strategy developed, the "game plan" did not include having him testify, particularly in light of Goodwin's prior convictions. Goodwin has not shown that his trial counsel failed to perform up to prevailing professional norms by not calling him to testify.

c. Finally, Goodwin's enumerates as ineffective his trial counsel's failure "to have available and to be able to call each and every defense witness," including witnesses to the initial investigation in Cobb County. His argument, however, does not describe the testimony of any particular missing witnesses or explain why their testimony would have been important. His argument is instead a general discussion of defense counsel's duty to investigate and intervene with the prosecution early in

11

the criminal process. Goodwin has thus not established any deficiency on his trial counsel's part related to calling witnesses, much less that a deficiency caused him prejudice.

3. Goodwin's last argument is that the trial court erred in the new trial hearing by sustaining the State's objection to questioning under oath the assistant district attorney who tried the case. At the hearing, after the ADA was sworn, Goodwin asked her whether she had had the Cobb County detective under subpoena for the trial. Counsel for the State objected and sought a proffer as to the relevance of the questions, absent an accusation of prosecutorial misconduct, because the clerk's file would provide evidence as to whether the detective had been subpoenaed, as could the detective himself. The trial court noted that the question was "somewhat offensive" because defense counsel was implying that the State hid the witness from the court. The court was also concerned about the ramifications of asking the prosecutor questions related to issues of trial tactics, in the event that the case were to be tried again. The trial court concluded that Goodwin could obtain the information he sought by calling the Cobb County detective as witness, and he continued the hearing until the detective could testify under oath whether he was present during the trial or not.

12

The motion for new trial hearing was reconvened with the Cobb County detective present. The detective testified that he was subpoenaed by the State when the case was first placed on a trial calendar, and was present at the courthouse then, but the case was continued. The State told him that he would be called if he was needed as a witness, and he was never called, although he remained under subpoena until the case was resolved. He also testified that he had not avoided service of the subpoena previously, and that when Goodwin's counsel called about coming to the hearing, he agreed to do so.

The trial court did not err in sustaining the State's objection to Goodwin calling the trial prosecutor as a witness at the motion for new trial hearing.

"The practice of trial attorneys testifying is not approved by the courts except where made necessary by the circumstances of the case." *Timberlake v. State*, 246 Ga. 488, 500 (7) (271 SE2d 792) (1980). "[T]he advocate as a witness poses innumerable threats to the integrity and reliability of the judicial process." *Castell v. Kemp*, 254 Ga. 556, 557 (331 SE2d 528) (1985). "[C]ourts have properly refused to permit a prosecutor to be called as a defense witness unless there is a compelling need." (Citations and punctuation omitted.) *Roberson v. United States*, 897 F.2d 1092, 1098 (IV) (F) (11th Cir. 1990). "Trial courts are generally held to have discretion on

13

whether to allow a party to call opposing counsel as a witness, on the view that attempting to call opposing counsel to establish some fact that can be readily proved in a different manner should be discouraged." *Louisiana v. Tuesno*, 408 So. 2d 1269, 1272 (La. 1982), quoting Pirsig & Kirwin, Professional Responsibility, pp. 378-379 (3rd ed. 1976).

Here, the circumstances of the case did not make it necessary for the prosecuting attorney to testify on the defendant's behalf during the hearing on the motion for new trial. The evidence sought was available through other means and eventually obtained by Goodwin. Accordingly, we find no error.

*Judgment affirmed. McFadden and McMillian, JJ., concur*.