**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 27, 2014**

# In the Court of Appeals of Georgia

A13A2391. NEW v. THE STATE.

DILLARD, Judge.

Following a trial by jury, Matthew Anthony New was convicted on thirty-five counts of sexual exploitation of children, two counts of child molestation, and one count of enticing a child for indecent purposes. On appeal from these convictions, New contends that (1) the evidence was insufficient as to his convictions for sexual exploitation of children; (2) the trial court erred by admitting improper evidence; (3) he received ineffective assistance of counsel; (4) the trial court erred in denying his motion to suppress evidence; and (5) his sentence is void. Because we agree with New that his sentence is void, we vacate his sentence and remand the case to the trial court for resentencing, but we affirm in all other respects.

Viewed in the light most favorable to the jury's guilty verdict,[1] the record reflects that in February 2010, New—a former police officer—was living in an apartment attached to his mother's home when his ex-wife and three children paid a visit to spend time with an ailing family pet. During the course of this visit, a disagreement arose between New and his middle child, B. N. And following that altercation, B. N. called the police to report an incident that occurred when he lived with his father some three years earlier.

According to B. N., he was 14 years old during the period in question and there came an evening when his 13-year-old girlfriend, T. P., visited the apartment B. N. shared with his father. During that evening, New encouraged B. N. and T. P. to engage in what he called "strip wrestling," explaining that the participants wrestle each other to the point of complete undress. New observed the event and photographed the minors as their clothes were removed down to their underwear, with T. P.'s bra being removed at one point.

And after the "strip wrestling" game concluded, New pulled B. N. aside and encouraged him to engage in sexual intercourse with T. P. in B. N.'s bedroom. New also set up a hidden video camera in B. N.'s bedroom under the suggestion that it

---

[1] *See, e.g.*, *Goolsby v. State*, 299 Ga. App. 330, 330 (682 SE2d 671) (2009).

would protect his son against any allegation of rape. Nevertheless, before engaging in sexual conduct with T. P., B. N. turned off the camera when New left the room.

Upon the report to law enforcement (which was made while B. N. was visiting his grandmother's home), an investigation ensued as officers arrived to speak with New at his attached apartment. During the investigation, officers searched for any items that could hold digital media, seizing a computer from New's residence. A forensic analysis of the computer revealed images depicting the "strip wrestling" incident as described by B. N. and T. P. Additionally, the same forensic search uncovered numerous images of child pornography. New was subsequently indicted for the offenses enumerated *supra* and convicted after a trial by jury. This appeal follows.

At the outset, we note that on appeal from a criminal conviction, "we view the evidence in the light most favorable to the jury's verdict, and the defendant is no longer presumed innocent."[2] And in evaluating the sufficiency of the evidence, we do not weigh the evidence or assess witness credibility, but only determine "if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the

---

[2] *Id.* (punctuation omitted).

3

charged offenses beyond a reasonable doubt."[3] Accordingly, the jury's verdict will be upheld so long as there is "some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[4] With these guiding principles in mind, we turn now to New's enumerations of error.

1. First, New contends that the evidence was insufficient to support a guilty verdict as to the thirty-five counts of sexual exploitation of children related to images of child pornography discovered on his computer.[5] Specifically, he argues that, based on the location of the recovered images on his hard drive, the State failed to prove that he knowingly possessed images of child pornography.

---

[3] *Id.* at 330-31 (punctuation omitted).

[4] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted).

[5] Although New does not challenge the sufficiency of the evidence as to his convictions for child molestation and enticing a child for indecent purposes, we note that the evidence was, nevertheless, sufficient to sustain guilty verdicts for same. *See* OCGA § 16-6-4 (a) (1) ("A person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person . . . ."); OCGA § 16-6-5 (a) ("A person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts."). *See generally Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LEd2d 560) (1979).

4

A person commits the offense of sexual exploitation of children in the manner for which New was convicted when he or she knowingly possesses "any material which depicts a minor or a portion of a minor's body engaged in any sexually explicit conduct."[6] Specifically, New was indicted for sexual exploitation of children in that, "on and between the 1st day of October 2007, and the 1st day of March 2010, the exact date unknown to the grand jury, [he] did knowingly possess Image ID: [relevant G.B.I. identification number]. Hash: [relevant hash value[7] number], material depicting [description of the relevant image's content] . . . ."

New was so indicted after images of child pornography were discovered on his computer during law enforcement's search for digital photographs of the "strip wrestling" incident. A G.B.I. computer forensics expert examined the hard drive of New's computer and testified to discovering both the "strip wrestling" pictures and the images of child pornography as "shadow copies" in the computer's system volume information.[8] According to the G.B.I. expert, the system volume file creates

[6] OCGA § 16-12-100 (b) (8).

[7] Hash values are explained *infra* at footnote 13 and its accompanying text.

[8] *See generally* Microsoft Knowledge Base Article - 309531, *How to Gain Access to the System Volume Information Folder*, MICROSOFT, http://support.microsoft.com/kb/309531 (last updated May 22, 2013) (concerning

5

daily file/data backups, in the form of shadow copies, to allow for restoration to previous file versions, although New's edition of the Windows Vista operating system did not permit user restoration to previous versions.[9] The images at issue were located in shadow copy volumes "that existed in January of 2010," meaning that the images were backed up in January 2010.

_____

access for the Windows XP operating system) ("The System Volume Information folder is a hidden system folder that the System Restore tool uses to store its information and restore points. There is a System Volume Information folder on every partition on your computer."); Microsoft TechNet Article, *How Volume Shadow Copy Service Works*, MICROSOFT, http://technet.microsoft.com/en-us/library/cc785914%28WS.10%29.aspx (last updated Mar. 28, 2003) (explaining that the creation of a shadow copy results in "two data images—the original volume and the shadow copy volume" with the "functional difference between the two [being] that the original volume maintains full read/write capabilities, whereas the shadow copy volume is read-only[,] . . . ensur[ing] that the shadow copy volume remains a point-in-time copy until its status is changed by the administrator for a specific purpose"); Neil Randall, *Controlling Shadow Copies in Vista (and Windows 7)*, PCMAG.COM (Mar. 6, 2009), http://www.pcmag.com/article2/0,2817,2342534,00.asp ("*Shadow Copies* is the informal term for Volume Shadow Copy Service (VSS), also known as 'Previous Versions.' All three names point to the same feature: the automatic saving of copies of files. The purpose of the service is to allow you to restore these backups of files that you have lost for any reason . . . .").

[9] The G.B.I. computer forensics specialist additionally testified to finding images from the "strip wrestling" incident in a thumb cache folder, explaining that the Windows operating system generates this file of thumbnail images after a user views the contents of a folder via the thumbnail-icon option.

With regard to computer usage, the G.B.I. specialist testified that only one Windows-operating-system user account (or profile) was consistently utilized on the computer's hard drive, and that user account/profile was named "Matt." The system also had one guest account/profile that had last been used on December 15, 2007, and another guest account/profile that had never been used.[10]

While searching the computer, the G.B.I. specialist discovered several user-installed software programs that could "clean" or "wipe" data from the computer's hard drive and erase, *inter alia*, Internet search history. One particular program was configured to conduct three "wipes" of the hard drive, which included removing deleted files from unallocated disk space[11] and altering the content of file data by "wip[ing] it with zeros" or "chang[ing] those letters so that that code is gone." The last system "wipe" occurred on December 16, 2009.

In addition to deletion software, the computer also contained LimeWire, a peer-to-peer file-sharing program from which the G.B.I. specialist obtained log files. These

---

[10] According to the testimony of New's own computer expert, the operating system was installed in November 2007.

[11] Unallocated disk space is also called "free disk space" and is "[t]he area of the disk where [a] deleted file resides." BILL NELSON ET AL., GUIDE TO COMPUTER FORENSICS AND INVESTIGATIONS 208 (4th ed. 2010).

logs identified files that were contained in the shared folder for the username "Matt," what files were downloaded, and recent downloads. In the G.B.I. specialist's expert opinion, the LimeWire log files indicated image and movie file names that were "likely to be associated with child pornography" downloaded to the user's shared folder.

With regard to the child-pornography images discovered on New's computer, the G.B.I. specialist testified that, due to the images' location on the hard drive and missing metadata,[12] she could not definitively say that the images came from LimeWire because the shadow copies did not maintain file names that she could link to the LimeWire log. The child pornography images could only be associated with a hash value, which amounts to a long string of letters and numbers that is unique to a given image.[13] Accordingly, the G.B.I. specialist could not determine whether the

---

[12] Metadata is "[d]ata describing a file or its properties, such as creation date, author, or last access date." LINDA VOLONINO & REYNALDO ANZALDUA, COMPUTER FORENSICS FOR DUMMIES 340 (2008).

[13] *See generally* NELSON, *supra* note 11, at 127 ("Because hash values are unique, if two files have the same hash value, they are identical, even if they have different filenames."); Ralph C. Losey, *Hash: The New Bates Stamp*, 12 J. TECH. L. & POL'Y 1, 2 (I) (June 2007) ("The hash algorithm analyzes a computer file and calculates a unique identifying number for it, called a hash value. No two electronic records have the same hash value. For that reason, it is called the 'digital fingerprint' of electronic documents.").

child pornography had only been viewed on a web page or whether the computer user downloaded it to the computer; however, she opined that it was likely that the files were downloaded to the computer based on the LimeWire log files' inclusion of file names that were likely to be associated with child pornography.

On appeal, New cites to *Barton v. State*[14] in support of his argument that because the G.B.I. computer forensics expert could not determine whether the shadow copy images were the result of downloads or were merely viewed on a website and automatically saved to the computer, there is insufficient evidence to sustain his convictions. We disagree.

In *Barton*, the defendant was indicted, and subsequently convicted, for knowing possession of child pornography after more than one hundred images were located in his computer hard drive's cache of temporary Internet files.[15] There, we

---

[14] 286 Ga. App. 49 (648 SE2d 660) (2007).

[15] *Id.* at 49-50. The cache (pronounced "cash") of temporary Internet files is used by web browsers "to store webpage content on the computer hard disk for quick viewing" and allows the browser to "download only the content that has changed since [the user] last viewed a webpage, instead of downloading all the content every time that the page is displayed." Microsoft Knowledge Base Article - 260897, *How to Delete the Contents of the Temporary Internet Files Folder*, MICROSOFT, http://support.microsoft.com/kb/260897 (last updated Sept. 6, 2013). This specific type of cache should not be confused with a system cache, which allows high-speed access to recently used data within the computer. *See generally* JEAN ANDREWS,

9

held that "the *mere* existence of pornographic images in the cache files of an individual's computer is insufficient to constitute knowing possession of those materials absent proof that the individual either: (1) took some affirmative action to save or download those images to his computer; or (2) had knowledge that the computer automatically saved those files."[16]

Despite the complexity involved in determining exactly when a person is knowingly in "possession or control" of child pornography transmitted electronically, the bottom line is relatively straightforward: Was the evidence presented sufficient to sustain the conviction? In the case *sub judice*, unlike in *Barton*, the evidence was more than sufficient to sustain the conviction. In *Barton*, we concluded that evidence of the temporary Internet cache files *alone* was not sufficient to sustain the conviction under OCGA § 16-12-100 (b) (8) because there was insufficient evidence to prove

---

GUIDE TO HARDWARE: MANAGING, MAINTAINING, & TROUBLESHOOTING 693, 702 (4th ed. 2007) (defining "disk cache" as "[a] method whereby recently retrieved data and adjacent data are read into memory in advance, anticipating the next CPU request," and defining "memory cache" as "[a] small amount of faster RAM that stores recently retrieved data, in anticipation of what the CPU will request next, thus speeding up access"). System cache is the type of cache that was discussed by the G.B.I. specialist in the case *sub judice* when she explained her discovery of "strip wrestling" pictures in a cache of thumbnail images. *See supra* note 9.

[16] *Barton*, 286 Ga. App. at 53 (2) (emphasis supplied).

knowing possession of the files themselves.[17] *Barton* makes no mention whatsoever

of any *other* evidence presented by the State, which we understand to mean that the

temporary Internet files represented the State's *sole* evidence,[18] and *Barton* therefore

narrowly approached the question in terms of *present* possession[19] of child

pornography based on the peculiar facts of that case. But *Barton* cannot be read to

foreclose the State's ability to prosecute and convict a defendant for *prior* possession

---

[17] *Id.* at 52 (1) (noting that the State did not "present any circumstantial evidence that would have allowed the jury to infer Barton's knowledge of these files"); *id*. ("In short, the State presented no evidence that Barton was aware of the existence of the files at issue, and in doing so, they failed to prove that Barton knowingly possessed these images.").

[18] *See id.* (holding that State failed to meet its burden of proof on the issue of the defendant's knowledge when the State's computer forensic's expert testified that the defendant "took no affirmative action").

[19] *See Haynes v. State*, 317 Ga. App. 400, 401 (1) (731 SE2d 83) (2012) (affirming conviction for possession of child pornography when "the evidence showed that the files containing the child pornography on [the defendant's] computer had been intentionally moved or downloaded to his computer and that the files had been modified on various dates"). *Cf. State v. Al-Khayyal*, 322 Ga. App. 718, 724-25 (744 SE2d 885) (2013) (reversing grant of plea in bar and motion to dismiss when defendant deleted original child pornography files before entering the country, but possessed a computer containing deleted .rar files, and there was evidence that defendant was aware of the location of the deleted .rar files, could have accessed the files with readily available software, and had advanced technical knowledge).

11

of child pornography when automatic backup files, in addition to other direct or circumstantial evidence, establish same.[20]

Indeed, it is well established in our case law that

[a] person who knowingly has direct physical control over a thing at a given time is in actual possession of it. A person who, though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing is then in constructive possession of it.[21]

And with regard to constructive possession, "[a]s long as there is slight evidence of access, power, and intention to exercise control or dominion over an instrumentality, the question of fact regarding constructive possession remains within the domain of the trier of fact."[22]

---

[20] *See Sorg v. State*, 324 Ga. App. 595, 597 (1) (751 SE2d 196) (2013) (upholding conviction when the time-date stamp on the temporary Internet file cache images reflected the same date that officers witnessed the defendant viewing child pornography in windows with separate URLs, the defendant was seen attempting to minimize and close those windows, and the computer's search history included websites from which some of the images originated).

[21] *Meridy v. State*, 265 Ga. App. 440, 441 (1) (594 SE2d 378) (2004) (punctuation omitted).

[22] *Hunt v. State*, 303 Ga. App. 855, 858 (2) (695 SE2d 53) (2010).

In the context of prior possession of child pornography, a computer user knowingly possesses the contraband when the user intentionally downloads child pornography to the computer but later deletes the file[23] or when he or she performs some function to reach out and select the image from the Internet.[24] Indeed, a computer user who intentionally accesses child pornography images on a website "gains actual control over the images, just as a person who intentionally browses child pornography in a print magazine 'knowingly possesses' those images, even if he later puts the magazine down."[25] In this way, any backup or residual files become

---

[23] *See State v. Schuller*, No. S–13–221, 2014 WL 684602, at *10 (2) (b) (Neb. Feb. 21, 2014) ("[T]he allegations in this case did not rest solely on the knowing possession of the deleted images; rather, the deleted images were also evidence of [the defendant's] prior possession, i.e., when he searched for, downloaded, and viewed child pornography (and before he deleted it).")

[24] *See Wise v. State*, 364 SW3d 900, 905 (I) (Tex. Crim. App. 2012) ("[E]vidence of pornography found in a computer cache could be sufficient to support a conviction because the presence of the images in the cache is evidence that, at some earlier point, a defendant knowingly or intentionally possessed the images by viewing them online.").

[25] *United States v. Kain*, 589 F3d 945, 50 (I) (C) (8th Cir. 2009); *see also Schuller*, 2014 WL 684602, at *5 (2) (holding that defendant knowingly possessed child pornography when he "repeatedly searched for, downloaded, viewed, and deleted child pornography"); *People v. Flick*, 790 NW2d 295, 298 (Mich. 2010) (rejecting defendants' arguments that they "merely viewed" rather than "knowingly possessed" child pornography accessed on Internet web pages because "the many intentional affirmative steps taken by defendants to gain access and control over child

*evidence of* possession at a prior point; the files need not represent the literal contraband.[26] Instead, the backed up or residual files are proof that a crime has occurred—that is, proof of the *corpus delicti*.[27] And while these files *standing alone* are not sufficient to establish that a defendant knowingly possessed those images at a prior point, they can be used in conjunction with other circumstantial evidence to

sexually abusive material belie[d] their claims that they merely viewed the depictions"); *Commonwealth v. Diodoro*, 932 A2d 172, 174 (¶ 11) (Pa. Super. Ct. 2007) ("[The appellant's] actions of operating the computer mouse, locating the Web sites, opening the sites, displaying the images on his computer screen, and then closing the sites were affirmative steps and corroborated his interest and intent to exercise influence over, and, thereby, control over the child pornography.").

[26] *See* Ty E. Howard, *Don't Cache Out Your Case: Prosecuting Child Pornography Laws Based on Images Located in Temporary Internet Files*, 19 BERK. TECH. L.J. 1227, 1255 (V) (A) (2) (Fall 2004) (explaining that when applying the "Evidence Of" approach, "cached images are evidence of previously possessed items—they represent a recording of the contraband . . . the computer is now analogous to a video camera that records all of the activity of the computer user").

[27] *Cf. Chancey v. State*, 256 Ga. 415, 421 (III) (1) (A) (c) (349 SE2d 717) (1986) ("We do not disagree that failure of the prosecution in a drug-possession case to introduce physical samples of the drug allegedly possessed does raise substantial questions with respect to whether the evidence is sufficient to authorize a verdict of guilty. However, in our opinion the absence of such proof does not lead ineluctably to the conclusion that there has been no proof of corpus delicti. . . . [T]he concept of corpus delicti requires that in a drug-possession case there be proof by the [S]tate that the defendant possessed (or perhaps attempted to possess) the illegal drug; however, there is no invariable requirement that in every such case, the drug itself be produced." (citation omitted)).

prove such possession.[28] The totality of the evidence presented by the State, of course, must support an inference that the act was wilful and not inadvertent.[29]

In the case *sub judice*, even if the State did not (and could not) present evidence that New was aware of the shadow copy images' existence and, thus, could not prove *present* possession of *those files*, there was more than sufficient circumstantial evidence for the jury to conclude that New knowingly possessed child pornography on his computer at a *prior* point. And because the State presented other circumstantial evidence, the shadow copies on New's computer were evidence of prior possession of the original images, no matter the manner in which those original

---

[28] *See Kain*, 589 F3d at 950 (I) (C) ("The presence of child pornography in temporary internet and orphan files on a computer's hard drive is *evidence* of prior possession of that pornography, though of course it is not conclusive evidence of knowing possession and control of the images, just as mere presence in a car from which the police recover contraband does not, without more, establish actual or construction [sic] possession of the contraband by a passenger.").

[29] *See Tecklenburg v. App. Div. Super. Ct.*, 87 Ca. Rptr. 3d 460, 473 (II) (Cal. Ct. App. 2007) (holding that evidence established that defendant possessed child pornography images by knowingly viewing images online); *see also Flick*, 790 NW2d at 305-06 (contrasting the possession of child pornography when there have been affirmative steps taken to view it online with the lack of evidence of possession of child pornography when it is viewed accidentally or inadvertently); *State v. Mercer*, 782 NW2d 125, 132 (¶ 18) (Wis. Ct. App. 2010) (recognizing the distinction between a person who knowingly seeks out child pornography on a computer, such that he possesses the images, and one who inadvertently and innocently views child pornography).

images were viewed—whether New downloaded the original images or limited his action to temporarily viewing the images on a web page.[30] The shadow copies, combined with the expert's testimony as to LimeWire logs that indicated searches for and downloads of child pornography, the number of child pornography images discovered, the user-installed deletion software and attendant settings, and the fact that New photographed B. N. and T. P. engaged in "strip wrestling," presented the jury with circumstantial evidence by which to find that New violated OCGA § 16-12-100 (b) by knowingly possessing child pornography at a prior time.[31] Indeed, the circumstantial evidence demonstrates purposeful and knowing access to child

---

[30] *See Ward v. State*, 994 So2d 293, 301-02 (Ala. Crim. App. 2007) (affirming conviction when evidence established that defendant constructively possessed child pornography by viewing images online); *see also Mercer*, 782 NW2d at 127 (¶ 33) (affirming conviction for possession of child pornography, despite absence of *any* file type on subject computer, when monitoring software tracked employee's Internet searches and showed "a habit of surfing for pornography" and using search "terms associated with child pornography and looked at images and text stories").

[31] *See People v. Josephitis*, 914 NE2d 607, 616-17 (Ill. App. Ct. 2009) (affirming conviction when evidence established that defendant extensively searched for and paid to access child pornography images online, establishing possession of images found in cache of temporary Internet files); *Mercer*, 782 NW2d at 137 (¶ 33) (affirming conviction when evidence established that defendant had a habit of searching for and viewing child pornography online and the jury heard evidence from which it could infer that the defendant used deletion programs to "delete[ ] the files where the forensic examiners would have found the child pornography stored in his hard drive").

16

pornography sufficient to prove that New did not inadvertently or unknowingly access those images.[32]

As to New's arguments that others had equal access to the computer, B. N. testified that his father's computer was password-protected; that his use of the computer was always supervised; and that his use of LimeWire was limited to downloading music and was supervised by New, using New's LimeWire account, with New typing in search terms. Additionally, as further discussed in Division 2, *infra*, New's ex-wife testified that New had his own account or user profile on the computer, which was password protected, and that New was a very private person. And whether evidence of equal access was "sufficient to rebut any inference of possession arising from discovery of contraband on [New's] computer was a question for the trier of fact."[33]

---

[32] *See State v. Hurst*, 909 NE2d 653, 665 (¶ 94) (Ohio App. 2009) (holding that defendant's "use of search terms to certain types of websites demonstrates his affirmative actions to obtain certain images and place them on his computer screen" and that the search terms themselves were further evidence of the defendant's "knowledge of the content of those images," making any lack of knowledge of the web cache operation irrelevant).

[33] *Tennille v. State*, 279 Ga. 884, 885 (2) (622 SE2d 346) (2005).

Accordingly, for all the foregoing reasons, we conclude that there was sufficient evidence by which to sustain New's convictions.

2. Next, New argues that the trial court erred by permitting inadmissible, irrelevant, and prejudicial evidence when the State elicited testimony from New's ex-wife concerning his possession of adult pornography. This enumeration of error is wholly without merit.

The record reflects that a key focus of New's defense was that others had access to the computer, including B. N. during the period he lived with his father. And during cross-examination of New's ex-wife, New's counsel questioned her extensively as to B. N.'s access to New's computer during and after their marriage, any efforts by law enforcement to rule out B. N. as a suspect, and her knowledge of B. N. and B. N.'s friends' interest in pornography, if any. Accordingly, during rebuttal, the State asked whether New's ex-wife had ever located pornography on the home computer and, upon learning that she had, whether B. N. or his friends were responsible. New's ex-wife responded that the only pornography she located was on the computer she shared with New and that she discovered it upon logging into his password-protected user profile.

New objected when the State continued to question the ex-wife about her discovery on the computer, the State apparently believing that the discovery included an image or video of child pornography that the ex-wife had burned to a disc and given to law enforcement. Thus, the State attempted to lay a foundation for the introduction of this disc. New's objections were sustained when the ex-wife mentioned her discovery of a lockbox that contained discs of pornography and, after lengthy discussion outside the jury's presence, the State decided to discontinue this entire line of questioning when it became clear that the State would be unable to introduce what it believed to potentially contain child pornography.[34] New then requested a curative instruction only as to the testimony concerning the lockbox of pornography, but the trial court denied this request under the belief that it would "heighten the problem for all concerned."

On appeal, New argues that the trial court erred by allowing the introduction of sexually explicit material unrelated to the crimes charged in violation of Georgia

[34] A review of the transcript and the discussion conducted outside the jury's presence reveals that the State itself misunderstood the origin of the evidence it sought to link to the crimes charged, and the confused questioning of New's ex-wife reflects same. Although the State initially believed that the suspected child pornography was contained on the disc the ex-wife herself burned from New's computer, the ex-wife explained that the suspected child pornography was actually located on a disc that she discovered in the lockbox.

law,[35] by allowing the introduction of evidence when the State never filed notice of intent to introduce similar transactions,[36] and by denying the request for a curative instruction. These assertions are wholly without merit because, contrary to New's arguments, it is clear from the record that the trial court did not permit the introduction of unrelated pornographic evidence.[37] Instead, the trial court merely permitted the State to question New's ex-wife regarding her access to and discovery of pornography on New's password-protected system-user profile, to rebut suggestions by New's counsel that B. N. could be responsible for the pornography, and to attempt to lay a foundation for evidence that, ultimately, was never admitted.

As we have previously noted, it is unclear whether *Simpson v. State*[38] "prohibits

---

[35] *See Simpson v. State*, 271 Ga. 772, 773 (1) (523 SE2d 320) (1999) ("[S]exually explicit material cannot be introduced merely to show a defendant's interest in sexual activity. It can only be admitted if it can be linked to the crime charged.").

[36] *See* Unif. Sup. Ct. R. 31.1 ("Notices of the [State's] intention to present evidence of similar transactions or occurrences . . . shall be given and filed at least ten (10) days before trial unless the time is shortened or lengthened by the judge.").

[37] *Cf. Frazier v. State*, 241 Ga. App. 125, 125-26 (1) (524 SE2d 768) (1999) (sexually explicit materials were not admissible because they were offered to show lustful disposition in general and were not linked to the crime charged).

[38] 271 Ga. 772 (523 SE2d 320) (1999).

20

oral testimony regarding a defendant's possession of pornographic materials, as opposed to admission of the materials themselves."[39] But here, the court sustained New's objections to and deemed inadmissible any other testimony or exhibits related to the ex-wife's discoveries of pornography—whether on the shared computer or elsewhere. And the testimony that *was* admitted was elicited in the State's rebuttal to questions New asked his ex-wife on cross-examination regarding B. N.'s interest in pornography and access to New's computer,[40] and the testimony was not evidence of a similar transaction.[41] Accordingly, we discern no error.

---

[39] *Phillips v. State*, 269 Ga. App. 619, 627 (5) (c) (604 SE2d 520) (2004) (quoting *Burk v. State*, 253 Ga. App. 272, 273 (1) (558 SE2d 726) (2001)); *see also Simpson*, 271 Ga. at 773 (2) ("Because Simpson's objection to the letters was sustained and he did not object when he was asked to read the letters, we do not decide whether the letters or their contents were admissible.").

[40] *See Alvarado v. State*, 248 Ga. App. 810, 811-12 (2) (547 SE2d 616) (2001) (holding that trial court did not err in admitting evidence of pornographic materials kept in defendant's home when, *inter alia*, defendant's counsel introduced the subject of pornographic materials during cross-examination of the victim's mother).

[41] *Cf. Cannon v. State*, 296 Ga. App. 687, 688-89 (2) (675 SE2d 560) (2009) (holding that admission of evidence that defendant previously "groomed" young boy, watched pornography with the boy, photographed the boy in the nude, and eventually molested boy was properly admitted as evidence of a similar transaction in defendant's trial for child molestation, sexual exploitation of children, and enticing a child for indecent purposes).

21

3. New's third enumeration of error concerns the effectiveness of his trial counsel. New attacks his trial counsel's performance for a number of reasons, contending that his attorney (1) failed to object to an alleged violation of the rule of sequestration, (2) failed to seek a directed verdict or jury charge based on *Barton v. State*,[42] (3) failed to present evidence in support of New's equal-access defense, (4) failed to elicit evidence as to a scar on New's foot, (5) failed to request specific jury charges, and (6) requested improper jury charges. This enumeration of error is without merit on each of these contentions.

To begin with, we note that, in general, when a defendant claims that his trial counsel was ineffective, he has the burden of establishing that "(1) his attorney's representation in specified instances fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[43] When a trial court determines that a defendant did not receive ineffective assistance,

_____

[42] 286 Ga. App. 49 (648 SE2d 660) (2007).

[43] *Muldrow v. State*, 322 Ga. App. 190, 193 (2) (b) (744 SE2d 413) (2013) (punctuation omitted).

22

we will affirm that decision on appeal unless it is clearly erroneous.[44] With these guiding principles in mind, we turn now to New's contentions in this regard.

(a) First, New argues that his counsel rendered ineffective assistance by failing to object to the lead investigator's presence in the courtroom after the rule of sequestration was invoked.

This argument lacks merit because New cannot show that, had counsel objected, the trial court would not have allowed the investigator to remain in the courtroom to assist the State's presentation of evidence.[45] Indeed, when the State realized that it had never sought permission for the investigator to remain in the courtroom (which, incidentally, occurred after a hearing in which the trial court found New, New's mother, and a family friend in contempt for violating the rule),[46] it sought permission from the court, which the trial court granted. Furthermore, New cannot establish that he was prejudiced by the investigator's presence because his

---

[44] *Id.*

[45] *See Hargett v. State*, 285 Ga. 82, 85 (3) (c) (674 SE2d 261) (2009) (rejecting claim that trial counsel was ineffective in failing to object to the presence of the lead investigator when "appellants did not show that the trial court would not have allowed [the witness] to remain to assist the prosecutor with the orderly presentation of the State's case").

[46] See discussion in Division (3) (c), *infra*.

own counsel used the witness's presence to highlight testimony favorable to the defense that the investigator heard from earlier witnesses.[47] Accordingly, New has failed to prove that he received ineffective assistance of counsel in this regard.

(b) Next, New argues that counsel was ineffective in failing to seek a directed verdict or jury charge based upon *Barton v. State*.[48] However, based on our resolution of the issues in Division 1, New cannot establish that he received ineffective assistance in this regard.[49]

(c) New contends that his trial counsel rendered ineffective assistance by failing to present testimony regarding others' access to his computer, testimony refuting B. N.'s assertion that password protection prevented unsupervised use of New's computer, and testimony that the deletion software programs were placed on

---

[47] *See Hargett*, 285 Ga. at 85 (3) (c) (holding that appellant could not establish prejudice when "the trial transcript reveal[ed] defense counsel on cross-examination used [the investigator's] presence favorably to highlight inconsistencies he had heard in the testimony given by the earlier witnesses").

[48] 286 Ga. App. 49 (648 SE2d 660) (2007).

[49] *See, e.g.*, *Owens v. State*, 324 Ga. App. 198, 202 (1) (b) (749 SE2d 783) (2013) ("[B]ecause the evidence was sufficient to support [the] convictions, counsel's failure to move for a directed verdict presents an insufficient ground as a matter of law for claiming ineffective assistance of counsel." (punctuation omitted)).

the computer by an outside vendor to fix viruses and/or malware. This assertion of error likewise lacks merit.

To begin with, New's counsel did in fact present evidence concerning others' access to and ability to log into the subject computer when New's grandmother, wife, and brother all testified to observing New's sons access the computer. As to the remaining evidence, New's trial counsel testified at the motion-for-new-trial hearing that he was hindered in presenting the evidence after New and New's mother were held in contempt for violating the rule of sequestration.[50] According to New's trial counsel, he decided against calling New's mother as a witness as planned because he feared damage to the defense if the mother was subject to cross-examination as to the contempt. Accordingly, he advised New against testifying for the same reason. Suffice it to say, New cannot and will not be heard to complain about a problem of his own making.

---

[50] The record reflects that in the middle of T. P.'s testimony, two law students—who were observing the trial—notified the State that they witnessed an individual in the gallery have a discussion with New, take notes during testimony, and then go out into the hallway to share the notes and discuss the testimony with New's mother. After a lengthy hearing conducted outside the jury's presence, the trial court ultimately held New, New's mother, and the family friend in contempt of court for violating the rule of sequestration.

Further, insofar as New's counsel made the decision not to call New's mother as a witness, it is well established that "the decision as to which defense witnesses to call is a matter of trial strategy and tactics."[51] In this regard, tactical errors "will not constitute ineffective assistance of counsel unless those errors are unreasonable ones no competent attorney would have made under similar circumstances."[52] Here, it was certainly not an unreasonable tactical decision by trial counsel to not call New's mother as a witness, given that doing so would have opened the door to cross-examination as to her and New's participation in the acts resulting in the finding of contempt.[53]

As to the lack of testimony by New himself, although counsel may have advised New not to testify, "[t]he decision whether or not to testify is a tactical one made by the defendant himself after consultation with counsel" and "[t]he choice of

---

[51] *Brown v. State*, 292 Ga. 454, 456 (2) (738 SE2d 591) (2013) (punctuation omitted).

[52] *Id.* (punctuation omitted).

[53] *Cf. Howard v. State*, 310 Ga. App. 659, 664-65 (3) (a) (714 SE2d 255) (2011) (holding that trial counsel's tactical decision not to call character witnesses because doing so could open the door to cross-examination and evidence of bad character was not unreasonable).

whether to testify is ultimately a defendant's."[54] Here, New confirmed that the decision not to testify was his own, and the trial court found that the decision was made with a complete understanding of his rights. As discussed *supra*, although trial counsel originally intended for New to testify, he advised against it after New was held in contempt. Under these circumstances, New has not shown that his counsel "failed to perform up to prevailing professional norms by not calling him to testify."[55]

(d) New next argues that counsel was ineffective by failing to elicit evidence of a scar on his foot. At trial, the State introduced a photograph from the "strip wrestling" incident that contained a portion of the photographer's left leg. New takes issue with his trial counsel's failure to introduce evidence of a scar on his left foot that does not appear on the appendage in the photograph, which he contends would have rebutted B. N. and T. P.'s testimony concerning his involvement in the incident, impeached the witnesses' credibility, and otherwise supported his defense.

Counsel testified at the motion-for-new-trial hearing that after New informed him of the scar during trial, he could not put New on the stand to rebut the evidence

---

[54] *Goodwin v. State*, 320 Ga. App. 224, 229 (2) (b) (739 SE2d 712) (2013) (punctuation omitted).

[55] *Id.* at 230 (2) (b).

27

and show his foot to the jury, again, because of the contempt issue discussed *supra*, which counsel believed "would be far more damaging versus a toe that you don't know who it's attached to in the photo." Additionally, counsel did not believe the scar issue was worth pursuing through other witnesses because, "without Matt showing the scar, [he did not] know [how] effective that would have been." Furthermore, although New claims that his trial counsel could have elicited evidence of the scar by questioning New's wife and brother, New presented no evidence of what their testimony would have been with regard to the scar.[56] Thus, for the same reasons discussed in Division 3 (c), *supra*, New cannot show that trial counsel's strategy was unreasonable. And even if he could establish that counsel's strategy was unreasonable, he has failed to establish prejudice thereby.[57] Thus, New has failed to demonstrate that his counsel rendered ineffective assistance in this regard.

(e) New argues that counsel rendered ineffective assistance by failing to request specific jury charges. In particular, New argues that his counsel was

---

[56] *Cf. Hernandez v. State*, 303 Ga. App. 103, 106 (2) (692 SE2d 712) (2010) (holding that defendant could not establish prejudice-prong on ineffective assistance of counsel claim when he failed to show "that any witnesses would have testified on his behalf or what their testimony might have been").

[57] *See id.*

ineffective in failing to request that the jury be charged (1) to consider the weight and credibility of the lead investigator's testimony in light of his presence in the courtroom in exception of the rule of sequestration or (2) to limit consideration of the respective offenses to the manner charged in the respective counts of the indictment. In a separate argument, he contends that his counsel was ineffective in that he caused the jury to be charged that they could find New guilty of child molestation and sexual exploitation of a child in manners not alleged in the indictment. These arguments are entirely without merit.

As to his argument with respect to the investigator's presence in the courtroom, for the reasons set forth in Division 3 (a), *infra*, New cannot establish that his counsel rendered ineffective assistance in failing to seek jury instructions for same.

As to counsel's alleged deficient performance for causing the jury to be charged that it could find New guilty of child molestation and sexual exploitation of a child in manners not alleged in the indictment, New has failed to establish that he received ineffective assistance of counsel. The trial court instructed the jury that child molestation is committed when a person "does an immoral, indecent act, *to or in the presence of*, with a child less than 16 years of age with the intent *to either arouse,*

29

*satisfy the sexual desire of the person or the child*."[58] And as to sexual exploitation of children, the trial court instructed the jury that "[i]t is unlawful for any person knowingly to *possess or control* any material which depicts a minor, or a portion of a minor's body, engaged in any sexually explicit conduct."[59] New was indicted on child molestation for committing "an immoral or indecent act to wit *in the presence of* and with [the victim] . . . with the intent to arouse and satisfy the sexual *desires of the accused* . . ."[60] and on sexual exploitation of children for "knowingly possess[ing]," but not controlling, the prohibited material. Thus, New argues that as a result of his counsel's requested instructions, the jury was instructed to find him guilty in a manner not alleged in the indictment.

It is unquestionable that, in criminal prosecutions, "the court's instructions must be tailored to fit the charge in the indictment and the evidence adduced at trial."[61] In particular, this is true when the offense charged "may be committed in one

---

[58] Emphasis supplied.

[59] Emphasis supplied.

[60] Emphasis supplied.

[61] *Boatright v. State*, 308 Ga. App. 266, 272 (1) (e) (707 SE2d 158) (2011).

30

of several ways, but the indictment charges one specific method."[62] Indeed, "[a]verments in an indictment as to the specific manner in which a crime was committed are not mere surplusage,"[63] and "[s]uch averments must be proved as laid, or the failure to prove the same will amount to a fatal variance and a violation of the defendant's right to due process of law."[64] Accordingly, the instructions from the trial court must "sufficiently limit the jury's consideration to the allegations and elements of the offense as charged in the indictment."[65] And in determining whether a charge contained error, "jury instructions must be read and considered as a whole."[66]

The trial court's instructions to the jury in the case *sub judice* included reading the indictment (which was sent to the jury room), charging the jury that the State had the burden of proving each element of the indictment beyond a reasonable doubt, and instructing the jurors that they could only convict New if they believed beyond a reasonable doubt that he committed the offenses alleged in the indictment.

---

[62] *Id.* (punctuation omitted).

[63] *Id.* at 272-73 (1) (e) (punctuation omitted).

[64] *Id.* at 273 (1) (e) (punctuation omitted).

[65] *Id.*

[66] *Id.*

31

Accordingly, the trial court's jury instructions, as a whole, "properly distinguished the acts upon which the [relative offenses were] based and limited the jury's determination of the [relative offenses] to those acts set forth in [those] count[s] of the indictment."[67] As such, New failed to satisfy the requirements necessary to prove that he received ineffective assistance of counsel in either regard.[68]

4. New next contends that the trial court erred by failing to grant his motion to suppress the evidence recovered during law enforcement's investigation because he contends that law enforcement exceeded the scope of his valid consent to search. This enumeration of error also lacks merit.[69]

---

[67] *Id.*

[68] *Id.* (holding under similar circumstances that defendant did not receive ineffective assistance of counsel).

[69] Conversely, New contends that a subsequently obtained search warrant was defective on its face and as executed; however, we need not address this contention because we find that law enforcement's forensic examination of New's computer was authorized by his consent to search. And any subjective belief by law enforcement that a search warrant was necessary is irrelevant. *Cf. Whren v. United States*, 517 U.S. 806, 813 (II) (A) (116 SCt 1769, 135 LEd2d 89) (1996) (holding that police officer's subjective intent was irrelevant in Fourth Amendment analysis because the focus is on whether officer had probable cause to search); *State v. Cooper*, 260 Ga. App. 333, 337 (2) (579 SE2d 754) (2003) (holding that search became lawful as a search incident to arrest despite officer's initial decision to perform an illegal search before discovering the outstanding warrants that led to arrest).

The record reflects that on the evening that B. N. called law enforcement to report the "strip wrestling" incident that occurred years prior, police officers arrived at New's residence to begin their investigation. Among the items seized that evening was the computer on which the "strip wrestling" images and, ultimately, child pornography images discussed in Division 1, *supra*, were discovered. Prior to trial, New filed a motion to suppress and post-hearing brief in support of same. The trial court denied the motion to suppress, finding that New consented to law enforcement's search, and issued a certificate of immediate review, but this Court denied New's application for interlocutory appeal.

When reviewing a trial court's decision on a motion to suppress, "we construe the evidence most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility of the witnesses are adopted unless they are clearly erroneous."[70] Additionally, because the trial court is the trier of fact, its findings "will not be disturbed if any evidence supports them."[71] Nevertheless, the

---

[70] *Dryer v. State*, 323 Ga. App. 723, 736 (747 SE2d 895) (2013) (punctuation omitted).

[71] *Id.* (punctuation omitted).

trial court's application of law to undisputed facts is reviewed *de novo*.[72] With these guiding principles in mind, we turn now to New's arguments.

At the suppression hearing, multiple police officers testified that New gave permission for the search of his residence, which was memorialized in a signed consent form. The consent-to-search-form reads as follows:

> I, Matthew New, have been informed by [officer 1] and [officer 2] who made proper identification as (an) authorized law enforcement officer(s) of the Fayetteville Police Department of my CONSTITUTIONAL RIGHTS not to have search made of the premises and property owned by me and/or under my care, custody and control, without a search warrant.
>
> Knowing of my lawful right to refuse consent to such a search, I willingly give my permission to the above named officer(s) to conduct a complete search of [residence address] as well as [vehicle descriptions].
>
> The above said officer(s) further have my permission to take from my premises and property, any letters, papers, materials, or any other property or things which they desire as evidence.

---

[72] *Id.*

This written permission to search without a search warrant is given by me to the above officer(s) voluntarily and without any threats or promises of any kind at 1910 pm on this 2nd day of [February] year 2010.

Due to the nature of the allegations against New—that he digitally photographed two minors engaged in "strip wrestling"—the officers seized any item that could possibly contain electronic media. One officer specifically testified that New gave oral consent to law enforcement's removal of the computer, along with other items. Another officer testified that New was told that the police wanted consent to search for the type of material relevant to the allegations and that New responded that he "understood" and "was going to cooperate fully" because the allegations were false. And New's mother, who testified on his behalf at the suppression hearing, echoed these claims, saying that New told her he allowed police to have the computer because he "had nothing to hide." Thereafter, the computer underwent forensic analysis by the G.B.I., as discussed in Division 1, *supra*.

When the State alleges that a search was conducted pursuant to consent, the State has the burden of proving the validity of the consensual search,[73] and we "are

---

[73] *Walker v. State*, 299 Ga. App. 788, 791 (2) (683 SE2d 867) (2009).

required to scrutinize closely an alleged consent to search."[74] In this regard, "[t]he intrusiveness of a consensual search—including the type, duration, and physical zone of the intrusion—is limited by the permission granted, and only that which is reasonably understood from the consent may be undertaken."[75]

Here, New was informed of the allegations against him and of the type of evidence officers sought—*i.e.*, digital photographs of the "strip wrestling" incident. He was also present during the officers' entire search of his residence and orally consented to the search, claiming that he was aware of the allegations and intended to cooperate fully. Finally, New signed a form memorializing his consent to a search of his residence, and that form expressly gave officers the right to "take from [New's] premises and property, any letters, papers, materials, or *any other property or things which they desire as evidence*."[76] New, who is himself a POST-certified police officer, knew the allegations against him and the type of evidence officers sought when he signed the form that granted broad consent to the removal of property the

---

[74] *Id.*

[75] *Id.*

[76] Emphasis supplied.

36

officers "desire[d] as evidence."[77] Accordingly, it would be reasonably understood that New's consent, which was never withdrawn (even as he saw officers remove the computer from his home),[78] extended to an examination of the hard drive after the

---

[77] *See Betancourt v. State*, 322 Ga. App. 201, 205-06 (2) (b) (744 SE2d 419) (2013) ("[A]fter [driver] made the voluntary offer [to allow search] and [the passenger] gave his contingent consent to search, the officer returned to [the passenger] and specifically asked if the vehicle contained 'guns or anything illegal,' including 'drugs or currency or anything of that nature.' [The passenger] denied the presence of the aforementioned items and consented to a search of the vehicle. Thus, [the passenger] gave consent to 'search' the vehicle, and his consent, which was not limited in scope, was given in direct response to the officer's query as to the presence of illegal drugs.").

[78] *See id.* at 206 (2) (b) (holding that trial court properly denied motion to suppress when, after consent was given, "at no time did either appellant object to the scope of the search or withdraw his consent as the search proceeded").

computer's removal from the property as evidence.[79] Thus, the trial court did not err in denying New's motion to suppress.

5. Finally, New argues that his sentence is void for failure to comply with OCGA § 17-10-6.2 (b). We agree with New's contention and, accordingly, must vacate his sentence and remand to the trial court for resentencing.

---

[79] *Cf. Semelis v. State*, 228 Ga. App. 813, 814, 815 (1) (b) (493 SE2d 17) (1997) (holding, when officer "testified that he 'made sure [the defendant] understood what the vehicle and the contents of the vehicle meant, that [the officer] wanted to search all the compartments inside the vehicle," that the consent to search was not exceeded when officer removed a vent cover inside vehicle); *State v. Corley*, 201 Ga. App. 320, 323 (411 SE2d 324) (1991) (holding that consent to search vehicle was exceeded when officer opened closed drawstring bag on front seat, because "according to the officer's own testimony, . . . the officer asked merely for permission to 'look inside' the vehicle and 'gave no indication that he intended to seize and examine the contents of any items or containers therein'" (citation omitted) (punctuation omitted)). *Compare Davis v. State*, 297 Ga. App. 319, 321 (677 SE2d 372) (2009) (holding that officer's search of trunk did not exceed defendant's consent to search of his car when officer placed defendant on notice that he was looking for contraband by informing defendant of problems with the transportation of illegal contraband), *with Walker*, 299 Ga. App. at 791-92 (2) (holding that defendant's consent to officer's search of his pockets could not "be interpreted as having extended so far as to have authorized the officer to, after searching all of his pockets and finding nothing, push [the defendant's] abdomen, pull his waistband forward, and look down inside [the defendant's] pants at his crotch area for narcotics").

To begin with, a sentence is void if the court "imposes punishment that the law does not allow."[80] Here, the relevant law is OCGA § 17-10-6.2, which pertains to the sentence of a person convicted of a sexual offense and which defines same as including child molestation, enticing a child for indecent purposes, and sexual exploitation of children.[81] The Code section further provides, in relevant part, that

> any person convicted of a sexual offense shall be sentenced to a split sentence which shall include the minimum term of imprisonment specified in the Code section applicable to the offense. No portion of the mandatory minimum sentence imposed shall be suspended, stayed, probated, deferred, or withheld by the sentencing court and such sentence shall include, in addition to the mandatory imprisonment, an additional probated sentence of at least one year.[82]

The mandatory minimum sentences for child molestation, enticing a child for indecent purposes, and sexual exploitation of children are five years, 10 years, and five years, respectively.[83]

---

[80] *Rooney v. State*, 287 Ga. 1, 2 (2) (690 SE2d 804) (2010) (punctuation omitted).

[81] OCGA § 17-10-6.2 (a) (5), (6), (10).

[82] OCGA § 17-10-6.2 (b).

[83] *See* OCGA § 16-6-4 (b) (1) (child molestation); OCGA § 16-6-5 (b) (enticing a child for indecent purposes); OCGA § 16-12-100 (g) (1) (sexual exploitation of

On appeal, New argues that his sentence is void because OCGA § 17-10-6.2 (b) requires a split sentence for each of his convictions for child molestation, sexual exploitation of a minor, and enticing a child for indecent purposes, with at least one year of probation included in each individual sentence. New was sentenced by the trial court as follows:

Count 13: Sexual Exploitation of Children

• 20 years to serve.

Count 16: Sexual Exploitation of Children

• 20 years to serve consecutive to Count 13.

Count 18: Sexual Exploitation of Children

• 20 years to serve consecutive to Counts 13 & 16.

Count 24: Sexual Exploitation of Children

• 20 years to serve consecutive to Counts 13, 16, & 18.

Count 26: Sexual Exploitation of Children

• 20 years to serve consecutive to Counts 13, 16, 18, & 24.

Count 59: Sexual Exploitation of Children

• 20 years to serve consecutive to Counts 13, 16, 18, 24, & 26.

---

children).

Count 38: Child Molestation

- 20 years to serve consecutive to Counts 13, 16, 18, 24, 26 & 59.

Count 58: Sexual Exploitation of Children

- 20 years (10 years to serve, 10 years' probation) concurrent to Counts 38, 16, 18, 24, 26, & 59.

Count 68: Sexual Exploitation of Children

- 20 years (10 years to serve, 10 years' probation) concurrent to Counts 13, 16, 18, 24, 26, 58, & 59.

Count 69: Sexual Exploitation of Children

- 20 years (10 years to serve, 10 years' probation) concurrent to Counts 13, 16, 18, 24, 26, 58, 59, & 68.

Counts 1, 2, 11, 20, 21, 28, 30, 31, 34, 42, 43, 45, 49, 50, 51, 52, 53, 54, 55, 57, 63, 64, 66, 71, 72: Sexual Exploitation of Children

- 10 years to serve, concurrent to all other counts.

Count 37: Enticing a Child for Indecent Purposes

- 10 years to serve, concurrent to all other counts.

Count 41: Child Molestation

- 10 years to serve, concurrent to all other counts.

Accordingly, New was sentenced to serve 140 years with a remaining 10 years served on probation. Although his sentences fall within the acceptable statutory range, the overall sentence itself violates OCGA § 17-10-6.2 because the trial court failed to impose a split sentence as to each count for which New was convicted, as required by the express terms of the statute.

In addressing New's argument that his sentence is void by the trial court's failure to impose a split sentence on each count, we first note that "[c]riminal statutes must be strictly construed against the State."[84] And contrary to the State's argument that nothing in OCGA § 17-10-6.2 requires a trial court to sentence a defendant to a period of confinement and at least one year of probation on each of multiple sexual offenses in a single indictment, the plain language of this Code section mandates that "any person convicted of a sexual offense . . . be sentenced to a split sentence which shall include the minimum term of imprisonment specified in the Code section *applicable to the offense* . . . [and] an additional probated sentence of at least one year."[85] The language of the statute speaks in terms of specific applicable mandatory minimum sentences, which makes clear that for each *applicable* offense, the trial

---

[84] *Davis v. State*, 273 Ga. 14, 15 (537 SE2d 663) (2000).

[85] OCGA § 17-10-6.2 (b) (emphasis supplied).

court must—with the exception of situations that fall under subsection (c)[86]—sentence a defendant to at least the mandatory minimum sentence *and* include an additional probated sentence of at least one year.[87] Furthermore, the Code sections for child molestation and enticing a child for indecent purposes, in addition to specifying the applicable sentencing range, both specify that a person so convicted is subject to the sentencing and punishment provisions of OCGA § 17-10-6.2.[88]

---

[86] *See* OCGA § 17-10-6.2 (c) (permitting trial court to deviate from the mandatory minimum sentence requirement of subsection (b) under certain circumstances).

[87] OCGA § 17-10-6.2 (b); *see also Bowen v. State*, 307 Ga. App. 204, 205 (2) (704 SE2d 436) (2010) (holding that OCGA § 17-10-6.2 (b) "mandates a split sentence for sexual offenders that includes at least the minimum term of imprisonment"). *Cf. Hedden v. State*, 288 Ga. 871, 873-74 (708 SE2d 287) (2011) ("Under OCGA § 17-10-6.2, one of the crimes for which a sentence is to include a minimum time to be served in prison is the sexual exploitation of children as set forth in OCGA § 16-12-100 (b) (8). Under the statutory scheme set forth in OCGA § 17-10-6.2, a trial court is prohibited from probating, suspending, staying, deferring, or withholding any of the mandatory term of imprisonment stated for any of the specified offenses." (footnote and citations omitted)).

[88] *See* OCGA § 16-6-4 (b) (1) ("[A] person convicted of a first offense of child molestation shall be punished by imprisonment for not less than five nor more than 20 years and shall be subject to the sentencing and punishment provisions of [OCGA §] 17-10-6.2 . . . ."); OCGA § 16-6-5 (b) ("[A] person convicted of the offense of enticing a child for indecent purposes shall be punished by imprisonment for not less than ten nor more than 30 years. Any person convicted under this Code section of the offense of enticing a child for indecent purposes shall, in addition, be subject to the sentencing and punishment provisions of [OCGA §]17-10-6.2.").

Accordingly, because the trial court failed to sentence New in accordance with OCGA § 17-10-6.2 (b), we must vacate New's sentence and remand to the trial court for resentencing consistent with the mandates of that Code section.[89]

*Judgment affirmed, sentence vacated, and case remanded for resentencing.*

*Andrews, P. J., concurs. Ray, J., concurs fully and specially.*

---

[89] For purposes of additional correction on remand, we note what appear to be scrivener's errors in the way of omissions and/or discrepancies between the trial court's written sentencing order and the final disposition, particularly with regard to Counts 58, 68, and 69, which omit reference to Counts 13 and 38.

A13A2391.  MICHAEL ANTHONY NEW v. THE STATE.


RAY, Judge, concurring specially.

While I fully concur in the Majority's opinion as to all divisions, I write separately to emphasize a practical problem in the statutory scheme for the sentencing of sexual offenses, which requires that a defendant receive at least one year of probation for each such offense in addition to the mandatory minimum prison sentence. OCGA 17-10-6.2(b). In imposing this requirement, the Legislature likely wanted to ensure that offenders not be released back into society after serving their

time without continued supervision. Such an approach seems reasonable, particularly with research suggesting that sexual offenders have a high propensity to reoffend. The thinking here is, thus, that continued supervision by a probation officer could deter further sexual offenses or at least minimize that risk.

At the same time, the situation presented in this case is that a defendant is charged and convicted of multiple counts constituting sexual offenses. Since each count is subject to both a mandatory minimum prison sentence that can't be suspended, stayed, probated, deferred or withheld by the sentencing court, and also must contain at least one additional year of probation, it presents challenges to the trial court in trying to make the sentence workable. If the trial court wants to maximize the time that a defendant spends in prison, it might decide to run some or all of the counts consecutively. However, that can be problematic since, as to each count, there must be at least one year of probation at the end of the mandatory minimum prison time. A consecutively run sentence would result in the defendant serving the prison part of one count, being released to probation for one year, and then reentering prison after the probation ended to serve the prison sentence on the next count.

The other option available to the trial court would be to run all counts concurrently. A concurrent sentence would prevent a defendant's release from prison to probation until all of his prison time on all counts had been completed. At the same time, it could result in a substantially shorter prison sentence than the circumstances warrant, particularly if the trial court structured the sentence that way just to avoid having a defendant released to probation in between his prison terms.

The Legislature, if it so chooses, could amend this code section to make this statutory scheme more workable. For example, it might provide that a defendant convicted of multiple sexual offenses must be sentenced to not less than one year of probation or not less than one year of probation for each count, but allow that all of the probation to be attached to the last count on which the defendant is sentenced. Such a modification would prevent the splitting of sentences where probation is sandwiched between prison terms, and it would also avoid a trial court resorting to concurrent sentences, unless the facts of the case so warrant, just to avoid the same problem.